1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11  MARCUS ANTHONY SWAN,                    Case No.:  21-cv-01455-JLS-MDD
    CDCR #BI-4007,
12
                              Plaintiff,    **ORDER:**
13
    v.
14                                          **(1) GRANTING LEAVE TO**
    R.J. DONOVAN C.F., Correctional         **PROCEED *IN FORMA PAUPERIS*;**
15  Institution; M. POLLARD, Institution    **AND**
    Warden; M.A. GLYNN, Institution
16  C.E.O.; DEPARTMENT OF                   **(2) DISMISSING COMPLAINT FOR**
    REHABILITATION, Department of           **FAILING TO STATE A CLAIM**
17  Corrections,                            **PURSUANT TO 28 U.S.C.**
                                            **§ 1915(e)(2)(B) AND**
18                                          **28 U.S.C. § 1915A(b)**
                              Defendants.
19
                                            **[ECF Nos. 2; 3]**
20

21

22        On August 13, 2021, pro se Plaintiff Marcus Anthony Swan, while incarcerated at

23  Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, filed a civil

24  rights complaint pursuant to 42 U.S.C. § 1983.  (*See* ECF No. 1 ("Compl.") at 1.)  Plaintiff

25  did not prepay the civil filing fee required by 28 U.S.C. § 1914(a).  Instead, he filed a Prison

26  Certificate and CDCR Inmate Statement Report.  (ECF Nos. 2; 3.)  The Court liberally

27  construes these filings as a request for leave to proceed *in forma pauperis* ("IFP") pursuant

28  to 28 U.S.C. § 1915(a).

1

**LEAVE TO PROCEED *IN FORMA PAUPERIS***

2    All parties instituting any civil action, suit, or proceeding in a district court of the

3    United States, except an application for writ of habeas corpus, must pay a filing fee of

4    $402.[1]   *See* 28 U.S.C. § 1914(a).   An action may proceed despite a plaintiff's failure to

5    prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C.

6    § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v.*

7    *Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).   The fee is not waived for prisoners, however.

8    If granted leave to proceed IFP, prisoners nevertheless remain obligated to pay the entire

9    fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams*

10   *v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether their actions are

11   dismissed for other reasons.  *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281

12   F.3d 844, 847 (9th Cir. 2002).

13   To qualify, § 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a

14   "certified copy of the trust fund account statement (or institutional equivalent) for . . . the

15   6-month period immediately preceding the filing of the complaint."   28 U.S.C.

16   § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).   From the certified

17   trust account statement, the Court assesses an initial payment of 20% of (a) the average

18   monthly deposits in the account for the past six months, or (b) the average monthly balance

19   in the account for the past six months, whichever is greater, unless the prisoner has no

20   assets.  *See* 28 U.S.C. §§ 1915(b)(1) & (4).   The institution having custody of the prisoner

21   then collects subsequent payments, assessed at 20% of the preceding month's income, in

22   any month in which his account exceeds $10, and forwards those payments to the Court

23   until the entire filing fee is paid.  *See id.* § 1915(b)(2); *Bruce*, 577 U.S. at 84.

24

25

---

26   [1]   In addition to the $350 statutory fee, civil litigants must pay a $52 administrative
27   fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc.
     Fee Schedule, § 14 (eff. Dec. 1, 2020)).   The $52 administrative fee does not apply to
28   persons granted leave to proceed IFP. *Id.*

1    Plaintiff has submitted Prison Certificates and certified copies of his CDCR Inmate

2 Statement Reports covering January through August 16, 2021.  (*See* ECF Nos. 2 at 1–3; 3

3 at 1–3.)  These documents show that Plaintiff carried an average monthly balance of $4.47,

4 had an average monthly deposit of $4.40 to his account over the 6-month period

5 immediately preceding the filing of his Complaint, and had an available balance of $7.34

6 at the time of filing.  (ECF No. 3 at 1, 3.)

7    Based on this accounting, the Court **GRANTS** Plaintiff leave to proceed IFP and

8 assesses an initial partial filing fee of $.89 pursuant to 28 U.S.C. § 1915(b)(1).  However,

9 this initial fee need be collected only if sufficient funds are available in Plaintiff's account

10 at the time this Order is executed.  *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no

11 event shall a prisoner be prohibited from bringing a civil action or appealing a civil action

12 or criminal judgment for the reason that the prisoner has no assets and no means by which

13 to pay the initial partial filing fee"); *Bruce*, 577 U.S. at 86; *Taylor*, 281 F.3d at 850 (finding

14 that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's

15 IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when

16 payment is ordered").  The remaining balance of the $350 fee owed in this case must be

17 collected by the Secretary of the California Department of Corrections and Rehabilitation

18 ("CDCR"), or any subsequent agency having custody of Plaintiff, and forwarded to the

19 Clerk of the Court pursuant to the installment payment provisions set out in 28 U.S.C.

20 § 1915(b)(2).

21    **SCREENING PER 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)**

22 **I.    Legal Standards**

23    *A.    28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)*

24    Because Plaintiff is a prisoner, his Complaint requires pre-answer screening

25 pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Under these statutes, the Court

26 must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it that is frivolous,

27 malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See*

28 *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C.

1  § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28

2  U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous

3  or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d

4  903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d

5  680, 681 (7th Cir. 2012)).

6       "The standard for determining whether a plaintiff has failed to state a claim upon

7  which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

8  Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d

9  1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir.

10  2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard

11  applied in the context of failure to state a claim under Federal Rule of Civil Procedure

12  12(b)(6)").  Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to

13  "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

14  on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted);

15  *Wilhelm*, 680 F.3d at 1121.  Detailed factual allegations are not required, but "[t]hreadbare

16  recitals of the elements of a cause of action, supported by mere conclusory statements, do

17  not suffice." *Iqbal*, 556 U.S. at 678.

18       The court "ha[s] an obligation where the petitioner is pro se, particularly in civil

19  rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of

20  any doubt."  *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v.

21  Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).  However, the court may not "supply

22  essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ.

23  of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

24       ***B.     42 U.S.C. § 1983***

25       "Section 1983 creates a private right of action against individuals who, acting under

26  color of state law, violate federal constitutional or statutory rights."  *Devereaux v. Abbey*,

27  263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "'is not itself a source of substantive

28  rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"

1  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S.

2  137, 144 n.3 (1979)).  "To establish § 1983 liability, a plaintiff must show both (1)

3  deprivation of a right secured by the Constitution and laws of the United States, and (2)

4  that the deprivation was committed by a person acting under color of state law."  *Tsao v.*

5  *Desert Palace, Inc*., 698 F.3d 1128, 1138 (9th Cir. 2012).

6  **II.     Plaintiff's Allegations**

7         In his Complaint, Plaintiff claims that at some unspecified time, Defendant CDCR

8  "agreed to an order" that prohibits it from "housing people with disabilities who have not

9  tested positive in unit[s] with people who have confirmed, active COVID-19," and requires

10  it to provide accessible housing "for those on medical isolation or quarantine."  (Compl. at

11  3.)  Because he suffers from several underlying medical conditions,[2] including diabetes,

12  hypertension, and hypercholesterolemia, Plaintiff "asked the institu[t]e to be release[d] so

13  that [he] wouldn't get infected."  (*Id.* at 4.)  However, RJD "disapproved [his] group 602[3]

14

15

16  _____

17  [2]       In the portion of his form Complaint entitled "Causes of Action," Plaintiff cites the
18  "*Armstrong*" case.  (Compl. at 3.)  *Armstrong v. Wilson* is a class action pending in the
    United States District Court for the Northern District of California that involves a "certified
19  class of all present and future California state prison inmates and parolees with disabilities
20  [who] sued California state officials in their official capacities, seeking injunctive relief for
    violations of the R[ehabilitation] A[ct] and the ADA in state prisons."  124 F.3d 1019, 1021
21  (9th Cir. 1997).  Although Plaintiff claims that he has several underlying medical
22  conditions, he does not allege that he is a class member in *Armstrong* or otherwise explain
    how or why *Armstrong* is relevant to his claims in this case.
23  [3]       In his Complaint, Plaintiff refers both to "group" and "medical 602" requests and/or
24  appeals.  (*See* Compl. at 3–4.)  To submit an administrative grievance regarding "an
    adverse policy, decision, action, condition, or omission by the Department," California
25  prisoners must "(1) type or print legibly on an official form CDCR 602-1 (03/20)."  Cal.
26  Code Regs. tit. 15, § 3482(b), (c) (2020).  To grieve a healthcare issue, a prisoner submits
    a CDCR Form 602 HC and "explain[s] the decision, action, condition, omission, policy, or
27  regulation that has had a material adverse effect upon [his] health and welfare for which
28  [he] seek[s] administrative remedy."  15 Cal. Code Regs. §§ 3999.226, 3999.277(a) (2019).

3:21-cv-01455-JLS-MDD

1  request asking for aggressive[] release of all vulnerable [and] elderly with underlying

2  medical condition[s]." (*Id.*)

3        On June 5, 2020, Plaintiff claims to have contracted COVID-19 from his cellmate.

4  (*Id.* at 3–4.) He alleges that "no medical intervention w[as] ever immediately undertaken"

5  and claims that he still has "trouble breathing"; feels weak, tired, and sore; has experienced

6  numbness and burning sensations in his feet; is "getting confused often"; and has short-

7  term memory problems. (*Id.* at 4.) Plaintiff further alleges that a "doctor proclaimed that

8  [he is] okay" and that he exhausted "all medical 602[s]," and that therefore, the "medical

9  staff at [RJD] were aware of what they were doing on 12/21/2020."[4] (*Id.*)

10        Plaintiff claims that RJD Warden M. Pollard and M.A. Glynn, the "C.E.O." of RJD,

11  violated his Eighth Amendment rights because they "were fully aware of the … prison

12  conditions and the dangers of [COVID-19], . . . yet still [failed] to keep the population

13  safe." (*Id.* at 4–5, 7.) Plaintiff seeks $1.6 billion in damages. (*Id.* at 7.)

14      ***A.    Eighth Amendment & Personal Liability: Defendants Pollard & Glynn***

15        As a preliminary matter, the Court finds that Plaintiff's Complaint fails to state any

16  plausible claim for relief against either Warden Pollard or C.E.O. Glynn. As Warden and

17  C.E.O., Plaintiff alleges only that both these officials "were aware of the dangers of

18  [COVID-19]" but failed to prevent his infection. (*Id.* at 2.)

19        Because "vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead

20  that each Government-official defendant, through the official's own individual actions, has

21  violated the Constitution." *Iqbal*, 556 U.S. at 676; *accord Palmer v. Sanderson*, 9 F.3d

22  1433, 1437–38 (9th Cir. 1993) (noting there is no respondeat superior liability under 42

23

24  ———————————

25  [4]    Plaintiff has not named any RJD medical care officials as defendants and does not

26  explain why or how the unidentified medical staff's December 2020 knowledge of his

27  medical condition, COVID-19 complications, or course of care *after* he alleges to have

28  contracted the disease from his cellmate on June 5, 2020, is related to his Eighth
Amendment conditions of confinement claims against Defendants Pollard or Glynn.

1    U.S.C. § 1983).  Supervisory officials like Pollard and Glynn may only be held liable under

2    § 1983 if Plaintiff alleges their "personal involvement in the constitutional deprivation, or

3    . . . a sufficient causal connection between [their] wrongful conduct and the constitutional

4    violation."  *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018); *Starr v. Baca*, 652

5    F.3d 1202, 1207 (9th Cir. 2011).  In other words, "a supervisor is liable for the acts of his

6    subordinates 'if the supervisor participated in or directed the violations, or knew of the

7    violations of subordinates and failed to act to prevent them.'"  *Corales v. Bennett*, 567 F.3d

8    554, 570 (9th Cir. 2009) (quoting *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d

9    1175, 1182 (9th Cir. 2007)).  Plaintiff's Complaint, however, "pleads no factual content

10   that allows the [C]ourt to draw the reasonable inference that [either Pollard or Glynn] [are]

11   liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Complaint includes no

12   specific factual allegations with respect to either Pollard or Glynn and does not describe

13   what either of them either did, or failed to do, with respect to Plaintiff's housing, health,

14   safety, or medical treatment.

15        Further, "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions';

16   it outlaws cruel and unusual 'punishments.'"  *Farmer v. Brennan*, 511 U.S. 825, 837

17   (1994).  Thus, to be held personally liable for Plaintiff's injuries under the Eighth

18   Amendment, Plaintiff must specifically allege that Defendants Pollard and Glynn acted

19   with deliberate indifference to a serious risk to Plaintiff's health or safety. *Castro v. County

20   of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016).   "A prison official acts with

21   'deliberate indifference . . . only if [he] knows of and disregards an excessive risk to inmate

22   health and safety.'"  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting

23   *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other

24   grounds by Castro*, 833 F.3d at 1076).  "Under this standard, the prison official must not

25   only 'be aware of facts from which the inference could be drawn that a substantial risk of

26   serious harm exists,' but that person 'must also draw the inference.'"  *Id.* (quoting *Farmer*,

27   511 U.S. at 837).  Thus, even "[p]rison official[s] who actually kn[o]w of a substantial risk

28   ///

1  to inmate health or safety may be found free from liability if they respond[] reasonably to

2  the risk, even if the harm ultimately [i]s not averted." *Farmer*, 511 U.S. at 844.

3  　　　The Court acknowledges that COVID-19 poses a substantial risk of serious harm.

4  *See Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020) ("[N]o one questions that

5  [COVID-19] poses a substantial risk of serious harm [to prisoners].").  However, to plead

6  a viable Eighth Amendment claim, Plaintiff must provide more than conclusory statements

7  that supervisory prison officials did not do enough to control the spread of the disease

8  within the entire prison.  *See Iqbal*, 556 U.S. at 678.  In situations where the challenged

9  "conduct is harmful enough to satisfy the objective component of an Eighth Amendment

10  claim, whether it can be characterized as 'wanton' depends upon the constraints facing the

11  *official*." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).  Because only the "'unnecessary and

12  wanton infliction of pain' implicates the Eighth Amendment," prisoners alleging cruel and

13  unusual punishment must plead some factual content to plausibly suggest each defendant

14  acted with a "sufficiently culpable state of mind." *Id.* at 297 (emphasis omitted) (citations

15  omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Blackwell v.

16  Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021)

17  (finding that the prisoner plaintiff failed to state a claim against the warden for failure to

18  adequately control the spread of COVID-19 in the prison); *Booth v. Newsom*, No. 2:20-cv-

19  1562 AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020) (*sua sponte* dismissing

20  Eighth Amendment claims against the Governor for "failing to provide adequate means for

21  prisoners to reduce their exposure to COVID-19").  Plaintiff's Complaint is devoid of facts

22  sufficient to plausibly suggest that either Warden Pollard or C.E.O. Glynn were personally

23  aware of his underlying medical vulnerabilities or that his cellmate had tested positive for

24  COVID-19.  *See also Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a

25  significant risk that he should have perceived but did not, while no cause for

26  commendation, cannot under our cases be condemned as the infliction of punishment.").

27  　　　Although Federal Rule of Civil Procedure 8 "does not require 'detailed factual

28  allegations,'" it does "demand[] more than an unadorned, the-defendant-unlawfully-

1    harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*,

2    550 U.S. 544, 555 (2007)).  In order "[t]o survive a motion to dismiss, a complaint must

3    contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible

4    on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570).  Here, as currently pleaded, nothing

5    in the Complaint plausibly suggests that Defendants Pollard or Glynn "through his own

6    individual actions, . . . violated the Constitution." *Id.* at 676; *see also Jones v. Cmty. Redev.*

7    *Agency of City of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984) (stating that even a pro se plaintiff

8    must "allege with at least some degree of particularity overt acts which defendants engaged

9    in" in order to state a claim); *Benitez v. Sierra Conservation Ctr.*, No. 1:21-CV-00370-

10   BAM PC, 2021 WL 4077960, at *6 (E.D. Cal. Sept. 8, 2021) ("In order to state a cognizable

11   Eighth Amendment claim against the warden and the Health Executive Officer, Plaintiff

12   must provide more than generalized allegations that the warden and the Health Executive

13   Officer have not done enough regarding control the spread [of COVID-19]."), *adopted by*

14   2021 WL 4593841 (E.D. Cal. Oct. 6, 2021).

15       For the foregoing reasons, Plaintiff's Eighth Amendment claims against Defendants

16   Pollard and Glynn must be dismissed *sua sponte* for failing to state a claim upon which

17   § 1983 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

18       **B.    *Eleventh Amendment Immunity: RJD & CDCR***

19       To the extent Plaintiff is attempting to sue RJD and CDCR, his claims are barred by

20   the Eleventh Amendment.  "The Eleventh Amendment bars suits for money damages in

21   federal court against a state, its agencies, and state officials acting in their official

22   capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Indeed,

23   the Eleventh Amendment prohibits federal courts from hearing a § 1983 lawsuit in which

24   damages or injunctive relief is sought against a state, its agencies (such as CDCR) or

25   individual prisons (such as RJD), absent "a waiver by the state or a valid congressional

26   override." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999).  "The Eleventh

27   Amendment bars suits [that] seek either damages or injunctive relief against a state, an arm

28   of the state, its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of*

1   *Lodi*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (quoting *Franceschi v. Schwartz*, 57 F.3d 828,

2   831 (9th Cir. 1995)).  "The State of California has not waived its Eleventh Amendment

3   immunity with respect to claims brought under § 1983 in federal court."  *Dittman*, 191 F.3d

4   at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also*

5   *Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding CDCR and

6   California Board of Prison Terms entitled to Eleventh Amendment immunity).

7         Because both RJD and CDCR are not "persons" subject to suit under § 1983, and

8   are instead agencies of the State of California, both are immune from suit under the

9   Eleventh Amendment.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100

10  (1984) (holding that Eleventh Amendment immunity extends to state agencies); *Hale v.*

11  *Arizona*, 993 F.2d 1387, 1398–99 (9th Cir. 1993) (holding that a state department of

12  corrections is an arm of the state, and thus, not a "person" within the meaning of

13  § 1983); *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ("[T]he State is not a

14  'person' for purposes of § 1983."); *see also Dragasits v. California*, No. 3:16-cv-01998-

15  BEN-JLB, 2016 WL 680947, at *3 (S.D. Cal. Nov. 15, 2016) ("The State of California's

16  Department of Corrections and Rehabilitation and any state prison, correctional agency,

17  sub-division, or department under its jurisdiction, are not 'persons' subject to suit under

18  § 1983.").

19        *C.*    *Leave to Amend*

20        For the reasons discussed above, the Court finds that the Complaint fails to state any

21  § 1983 claim upon which relief can be granted and dismisses it *sua sponte* pursuant to 28

22  U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).  *See Watison*, 668 F.3d at 1112; *Wilhelm*,

23  680 F.3d at 1121.  However, the Court will grant Plaintiff leave to amend.  *See Rosati v.*

24  *Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro

25  se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it

26  is absolutely clear that the deficiencies of the complaint could not be cured by

27  amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

28  ///

**CONCLUSION**

For the foregoing reasons, the Court:

(1)     **GRANTS** Plaintiff leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) (ECF Nos. 2; 3);

(2)     **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's trust account the $.89 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). *ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION*;

(3)     **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov;

(4)     **DISMISSES** the Complaint *sua sponte* and in its entirety based on Plaintiff's failure to state a claim upon which relief may be granted and pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and

(5)     **GRANTS** Plaintiff sixty (60) days' leave from the date on which this Order is filed to file an amended complaint that cures all the deficiencies of pleading noted above. The amended complaint must be clearly titled "Amended Complaint," include Civil Case No. 21-CV-1455 JLS (MDD) in its caption, and must be complete by itself without reference to the original Complaint. Defendants not named and any claims not re-alleged in the amended complaint will be considered waived. *See* CivLR 15.1; *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend that are not re-alleged in an amended pleading may be "considered waived if not repled").

///

3:21-cv-01455-JLS-MDD

1    If Plaintiff fails to file an amended complaint within 60 days, the Court will enter a

2 final Order dismissing this civil action based both on his failure to state a claim upon which

3 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b) and his failure to

4 prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427

5 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity

6 to fix his complaint, a district court may convert the dismissal of the complaint into

7 dismissal of the entire action.").

8    **IT IS SO ORDERED**.

9 Dated:  November 24, 2021

10                                                    Hon. Janis L. Sammartino
                                                     United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28